JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Ryan Sharpley, appeals his conviction for domestic violence. After a thorough review of the record and for the reasons set forth below, we affirm.
 {¶ 2} On May 23, 2005, appellant was arrested by Cleveland police officers for a report of domestic violence against victim, Sherry Rollins.
 {¶ 3} Appellant and the victim had previously been in a relationship and had a daughter together. The incident that gave rise to the charges occurred on May 23, 2005. Appellant, the victim, their daughter, and the victim's mother resided together in a home on Benham Avenue in Cleveland. On the evening of the incident, an argument developed between appellant and the victim. The victim called 911 to alert police to the dispute; however, the call was disconnected. As a part of 911 policies, the dispatcher called the victim back and heard a lot of screaming in the background. Determining that a domestic dispute was in progress, the dispatcher sent police officers to the victim's house. When Cleveland police officer Thomas Barnes and his partner arrived at the house, they noticed that the victim was very upset and was holding a paper towel to her finger. When the paper towel was removed, the officers observed a fresh cut on her finger. They also observed swelling on the side of her face, and took photographs of her injuries. In addition, they collected from her home a steak knife that was covered with blood. Although the victim sustained several injuries, appellant was physically unharmed.
 {¶ 4} Appellant was indicted on June 3, 2005 for domestic violence. He was arraigned on June 15, 2005 and entered a plea of not guilty. He opted for a jury trial, which was originally set for September 21, 2005, but the state requested a continuance because the victim failed to appear. In addition, the state requested a bench warrant for the victim, which was granted, and the trial was continued until September 26, 2005. Despite the bench warrant, the victim again failed to appear, but trial went forward on September, 26, 2005.
 {¶ 5} At the beginning of the trial, the state asked the trial court to amend the original complaint to reflect that appellant's real name is Ryan Sharpley, rather than Ryan Rollins, which appeared on the indictment. They also asked that the indictment be clarified to show that appellant had been previously convicted of domestic violence in Cleveland Municipal Court, rather than the Cuyahoga County Common Pleas Court. The trial court noted the amendments and proceeded.
 {¶ 6} Although the victim was not present, the state called three witnesses. Thomas Barnes, the Cleveland police officer who had responded to the domestic violence report, testified regarding the evening of the incident. Detective Bonnie Rudolph, of the Cleveland police crime scene unit, verified appellant's booking records and past conviction for domestic violence. John Gigante, of the Cleveland police radio unit, authenticated the 911 call made by the victim reporting the incident.
 {¶ 7} Once the state rested its case, counsel for appellant made a Crim.R. 29 motion for acquittal asking the trial court to dismiss the charges against appellant for lack of evidence demonstrating domestic violence. Appellant's counsel also moved to strike the 911 call made by the victim. The trial court denied appellant's motion for acquittal; however, it granted his motion to strike the 911 call. Appellant then rested his case without calling any witnesses, and he renewed his motion for acquittal, which was again denied by the trial court. Appellant moved to have his counsel recused; however, the trial court denied appellant's motion and proceeded to closing arguments.
 {¶ 8} After closing arguments, the jury left to deliberate and returned a verdict later the same day, finding appellant guilty of one count of domestic violence. On October 18, 2005, appellant was sentenced to one year of incarceration.
 {¶ 9} Appellant appeals his conviction, asserting four assignments of error for our review: "The jury verdict was not supported by the weight and sufficiency of the evidence."
 {¶ 10} In his first assignment of error, appellant argues that the verdict rendered by the jury was against the manifest weight of the evidence and was not supported by the sufficiency of the evidence. More specifically, he asserts that the state did not present sufficient evidence that he caused the victim's injuries, or that he was a family or household member, as required by the domestic violence statute.
 {¶ 11} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955),162 Ohio St. 486. A conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982),457 U.S. 31, citing Jackson v. Virginia (1979), 443 U.S. 307. Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988),39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St.2d 230. On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259; Jackson v. Virginia (1979),443 U.S. 307.
 {¶ 12} Sufficiency of the evidence is subject to a different standard than is manifest weight of the evidence. Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. Cityof Cleveland (1948), 150 Ohio St. 303, 345.
 {¶ 13} The United States Supreme Court recognized the distinctions in considering a claim based upon the manifest weight of the evidence as opposed to sufficiency of that evidence. The court held in Tibbs v. Florida, (1982)457 U.S. 31 that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43. Upon application of the standards enunciated in Tibbs, the court inState v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 14} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Martin at 720.
 {¶ 15} We find no merit in appellant's contentions that the jury's verdict was against the manifest weight of the evidence or that the state's case was not supported by sufficient evidence. The state presented three witnesses against appellant, who all corroborated the charge of domestic violence.
 {¶ 16} Cleveland police officer Thomas Barnes testified that the victim was emotionally shaken when he arrived at the house shared by the victim and appellant. He described the injuries sustained by the victim and also testified regarding the steak knife found in the house that was covered with the victim's blood.
 {¶ 17} Officer Barnes also offered testimony concerning appellant's statements regarding the incident. After the appellant was read his Miranda rights, he was placed in the back of the officer's squad car. While in the squad car, appellant made the statement "I didn't cut that ho. I'm a gentleman. I just punched her." Because the appellant made the statement after he had been properly Mirandized, Officer Barnes was permitted to testify regarding the statement.
 {¶ 18} In addition to the testimony of Officer Barnes, John Gigante, a dispatcher for the Cleveland police department, testified against the appellant. Gigante authenticated the audio tape containing the victim's 911 call and provided the court with an explanation of the call's format. The 911 tape was played for the court, giving an opportunity to hear the victim as she spoke with the 911 operator and also the background commotion that was occurring between the victim and appellant during the call.
 {¶ 19} Lastly, the state called Bonnie Rudolph, a detective for the Cleveland police crime scene records unit. Rudolph's testimony described the Cleveland police booking process and also authenticated appellant's previous conviction for domestic violence.
 {¶ 20} To the contrary, appellant did not present any witnesses on his behalf to support his claim of innocence. Although the victim herself failed to appear at trial, the state provided more than sufficient evidence to support the jury's verdict. In addition, it is clear, considering the caliber of evidence presented at trial, that the jury's verdict was not against the manifest weight of the evidence. Accordingly, the jury did not err in finding appellant guilty, and his first assignment of error is overruled.
 {¶ 21} "II. The court committed plain error in violation of defendant's rights under Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution when it denied the Rule 29 motions to dismiss, amended the indictment after all evidence had been presented, repeatedly permitted hearsay testimony, confused the jury prior to trial by giving confusing directions as to what constituted evidence and incorporated a maximum sentence for post release control in the journal entry, but not at sentencing."
 {¶ 22} Appellant next argues that the trial court committed plain error when it made several key decisions with respect to his trial, including denying his motion for acquittal, admitting hearsay testimony, amending his indictment prior to trial, and confusing the jury with improper instructions. We disagree.
 {¶ 23} To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See State v.Tichon, (1995), 102 Ohio App. 3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions.State v. Waddell (1996), 75 Ohio St. 3d 163, 166,661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips
(1995)74 Ohio St. 3d 72, 83, 656 N.E.2d 643.
 {¶ 24} It is clear from the record that the trial court did not commit plain error when it denied appellant's motion for acquittal. Appellant's complete failure to call any witnesses on his behalf, as well as the strong testimony provided by the state's witnesses, make it evident that acquittal was not warranted in this case.
 {¶ 25} We also find no merit to appellant's arguments that the trial court committed plain error when it allowed for the admission of hearsay testimony and denied him the right of confrontation. Appellant asserts that the testimony of Officer Barnes regarding statements appellant made in the back of the patrol car constituted hearsay and that the trial court's decision to play the 911 tape in open court denied him the right of confrontation.
 {¶ 26} Officer Barnes testified regarding statements made by the appellant while he was in police custody after he had been given his Miranda rights. After a suspect has been read his Miranda rights, he is fully informed of his right to remain silent, and he is also made aware that any statements made by him after that point may be asserted against him in future legal proceedings. Officer Barnes read the appellant his rights prior to the appellant making the statement, "I didn't cut that ho. I'm a gentleman. I just punched her." Accordingly, it was well within the trial court's authority to allow Officer Barnes to testify regarding the statement.
 {¶ 27} Similarly, the trial court did not commit plain error when it allowed the 911 tape to be played in open court. Appellant argues that the trial court denied him the right of confrontation by playing the tape, but this argument is not supported by the confrontation clause of the U.S. Constitution. The Sixth Amendment to the U.S. Constitution provides in that, in all criminal prosecutions, an accused shall enjoy the right to confront the witnesses against him. The 911 tape did not constitute testimony for purposes of the Sixth Amendment; rather, it was evidence properly authenticated by Cleveland police dispatcher, John Gigante. The 911 tape was played only one time in open court, and Gigante did not offer testimony regarding what was actually said on the tape. In addition, it is important to note that the trial court granted appellant's motion to strike the 911 tape, preventing it from being admitted as evidence for the jury's full examination, and the jury was admonished not to consider it.
 {¶ 28} It is clear that the trial court's actions with respect to Officer Barnes' testimony and the 911 recording were not improper.
 {¶ 29} Lastly, appellant argues that the trial court committed plain error when it failed to inform him at sentencing that post-release control would comprise a large portion of his sentence. We find no merit in this argument. When appellant was sentenced, the trial court went to great lengths to inform him of the terms of post-release control, stating:
 {¶ 30} "Remember, post-release control may be applied to your sentence upon your release by the Adult Parol Authority. If they do apply it, it could last up to three years, during which time if you violate any conditions of that or any further laws in the United States or any state or municipality, the Parole Authority can take you back to prison up to one half of the court's sentence or charge you with a new case or do both at the same time. Understand that if they charge you with a new case, most commonly known as escape, it's one degree felony higher than what you are in prison for. You are going on a felony four, which means if you get an escape afterwards it would be a felony three. It gets more serious as you go on. So if you get put on post-release control, pay attention. Good luck to you."
 {¶ 31} It is clear that the trial court went into great detail with appellant to explain post-release control and to ensure that appellant understood the repercussions of his actions as they pertain to post-release control and the possible length of time he could be subject to it.
 {¶ 32} Appellant asserts additional arguments here; however, it is overwhelmingly clear from the record that the trial court did not commit plain error. The trial court made several key decisions during the course of the trial, and the record strongly indicates that none of those decisions were so egregious that, but for their occurrence, the outcome of the trial would have differed. Accordingly, appellant's second assignment of error is overruled.
 {¶ 33} "III. Prosecutorial misconduct denied the Defendant a fair trial and the opportunity to adequately prepare for trial when: 1. She repeatedly gave her opinion as to the facts of this case; 2. Presented the state's case solely on inadmissable hearsay; 3. Misrepresented the specifications in the indictment; 4. Improperly led and bolstered the credibility of testifying police officer by referring to his vast experience as a police officer; 5. Failed to provide discovery of an alleged statement of the defendant and the certified copy of the prior conviction until the day of trial."
 {¶ 34} Appellant next argues that the state's actions throughout the trial constituted misconduct. More specifically, he asserts that the prosecutor presented hearsay testimony, repeatedly gave her own opinion as to appellant's guilt, misrepresented appellant's indictment, bolstered testimony and failed to provide him and his counsel with discovery.
 {¶ 35} "The conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial. It must be clear beyond a reasonable doubt that absent the conduct of the prosecution, the jury would still have found the defendant guilty." State v. Vrona (1988),47 Ohio App.3d 145.
 {¶ 36} We find no indiction from the record or the trial testimony that the prosecutor either presented hearsay testimony when she called Officer Barnes to testify or that she bolstered his testimony. Officer Barnes testified to his first-hand observations from the evening of the incident. He observed the injuries to the victim, he witnessed her upset and emotional state, and he also heard a statement from appellant admitting to punching the victim. The prosecutor did not bolster Officer Barnes' testimony when she referred to his experience, but rather provided the jury with sufficient background information regarding Officer's Barnes' qualifications as a police officer and his knowledge with respect to domestic violence. Officer Barnes offered a first-hand account of appellant's actions, and the prosecutor merely laid the proper foundation for his testimony by discussing his experience. It is clear that the prosecutor's actions with respect to Officer Barnes were entirely appropriate.
 {¶ 37} In addition, the prosecutor's statements throughout the trial were not based on her personal opinion. She presented the facts of the case and did not interject her own personal beliefs with respect to appellant's guilt or innocence. During her opening statement, examinations and closing argument, she alluded to legal conclusions, but never imposed her personal opinion.
 {¶ 38} Lastly, appellant has not provided credible evidence showing that the state failed to comply with discovery requests, and his argument that the state misrepresented the indictment is unfounded. The state requested in open court that certain corrections be made to the indictment. In response, the trial court noted the corrections and ensured that the jury was aware of them.
 {¶ 39} We do not find that the prosecutor committed any misconduct. Appellant has not provided any credible evidence of inappropriate conduct on the part of the prosecutor or that, but for her conduct, the outcome of his trial would have differed. Accordingly, appellant's third assignment of error is overruled.
 {¶ 40} "IV. Mr. Sharpley was denied his rights to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth Amendment to the United States Constitution when his attorney failed to: 1. File a motion to suppress the prior uncounseled conviction in municipal court and the 911 tape prior to trial; 2. Failed to preserve for error the hearsay testified to by the state witnesses; 3. Failed to renew his motion to dismiss when victim failed to appear and preserve for error his objections; 4. Failing to any [sic] motions to compel discovery or to place on the record the fact that discovery was not presented until the day of trial; 5. Failed to fully discuss discovery and prior conviction with his client to determine its validity."
 {¶ 41} Appellant finally argues that he was denied effective assistance of counsel because his attorney failed to suppress the 911 audio tape, failed to preserve hearsay objections, failed to renew his motion to dismiss, failed to file motions to compel discovery and also failed to discuss appellant's prior conviction to determine its validity.
 {¶ 42} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington
(1984), 466 U.S. 668, State v. Brooks (1986),25 Ohio St.3d 144.
 {¶ 43} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner.State v. Smith (1985), 17 Ohio St.3d 98; Vaughn v. Maxwell
(1965), 2 Ohio St.2d 299.
 {¶ 44} The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley
(1989), 42 Ohio St.3d 136, that:
 {¶ 45} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle
(1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498,358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States supreme Court in Strickland v. Washington
(1984), 466 U.S. 668. * * *
 {¶ 46} "Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. `An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365 (1981).'Strickland, supra, at 691. To warrant reversal, `[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice. * * *.
 {¶ 47} "Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, supra, at 141, 142.
 {¶ 48} We find no merit in appellant's argument that his counsel was ineffective. As previously discussed, Officer Barnes' testimony did not constitute hearsay and was entirely admissible. The 911 recording did not deprive appellant of his right to confrontation and, more importantly, was never admitted into evidence. In addition, appellant argues that his attorney failed to file and renew motions that could have resulted in an acquittal; however, the reality is that appellant did not present any witnesses on his behalf, which was very damaging considering the testimony presented by the state's three credible witnesses, who corroborated the victim's claims. Lastly, appellant's argument that his attorney never conducted discovery regarding his previous conviction to prove its validity has no merit. Although there was initial confusion by the court as to whether appellant's previous conviction was before the Cleveland Municipal Court or the Cuyahoga County Common Pleas Court, that confusion was quickly resolved, and the trial court noted on the record that appellant's previous conviction was, in fact, a municipal court case.
 {¶ 49} Accordingly, we do not find that appellant's counsel was ineffective and, even in the event that his actions did constitute ineffective counsel, the record does not indicate that the outcome of the trial would have differed. The state presented credible testimony from three witnesses, while the appellant failed to present any witnesses on his behalf. After the trial concluded, the jury was given the opportunity to evaluate all of the evidence admitted at trial and reached a verdict finding the appellant guilty of domestic violence. Due to the strength of the state's case, it is clear that counsel's actions did not induce the guilty verdict. Thus, the appellant's final assignment of error is overruled, and we affirm the judgment of the trial court.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Nahra, J.,* concurs; Dyke, A.J., Dissents (With Separate Opinion)
* SITTING BY ASSIGNMENT: JOSEPH J. NAHRA, RETIRED, OF THE EIGHTH DISTRICT COURT OF APPEALS.